# EDGERTON

*v.*

# THE BALTIMORE AND OHIO RAILROAD COMPANY.

RAILROADS ; NEGLIGENCE ; CONTRIBUTORY NEGLIGENCE.

1. Where in a suit against a railroad company for the negligent killing of plaintiff's. decedent, the testimony showed that deceased while standing on the edge of a station platform and facing a north-bound accommodation train which was slowing up to stop, was struck by a south-bound express train running at the rate of 50 or 60 miles an hour along a track straight for a mile or more, it was *held*, affirming a judgment for defendant on a verdict directed by the trial court, that the death of deceased was the immediate result of his own want of ordinary care and prudence and the defendant was not liable for damages.

2. In such a case, a rule of the defendant company prohibiting the passage of other trains while any train is engaged at a station in receiving or discharging passengers, cannot be invoked where deceased is shown not to have been aware of its existence.

No. 456.　Submitted May 16, 1895.　Decided June 7, 1895.

HEARING on an appeal by the plaintiff from a judgment on verdict directed by the court in an action for damages for death by alleged wrongful act. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is a suit to recover damages from the appellee for the alleged unlawful killing of the appellant's intestate.

James Edgerton, the deceased, lost his life on October 10, 1892, at University Station, on the line of the Baltimore and Ohio Railroad, a short distance north of the city of Washington, by contact with the engine of an express train of the railroad company under somewhat peculiar circumstances. It seems that, on the morning of the day mentioned, Edgerton, who was apparently a resident of Rockville, in the State of Maryland, but had some employment

at Brookland, in the District of Columbia, adjoining University Station, had purchased at Rockville from the agent of the railroad company a railroad round-trip ticket, good for two days, which entitled him to transportation by the company from Rockville to Washington and back from Washington to Rockville.  It would seem that, having taken the train at Rockville, he left it at University Station, before reaching Washington, and it is surmised that he purchased the two-days ticket between Rockville and Washington, rather than the only direct ticket sold by the company between Rockville and University Station, which was good for thirty days, because the former was cheaper, and he was under no necessity of coming with it to Washington, as he could leave and again re-enter the train for his return trip at University Station.  He was seen at University Station, according to the testimony of one of the witnesses, about nine o'clock in the morning of the day on which he was killed.  Singularly enough, there is nothing in the record before us to show at what time of the day he was killed, or even whether it was in the morning or the afternoon.  And it is also a singular fact, that, although the ticket which he had purchased that morning was a coupon ticket, no portion of it nor any trace of a ticket was found upon his person after his death, and none was offered in evidence at the trial.  Indeed, the whole testimony in the case, although it was perhaps all that was attainable by the plaintiff, was remarkably meagre and unsatisfactory.

There were two eye witnesses, however, of the accident itself.  These two persons were standing at the time on the porch of the residence of one of them, situated about 300 feet away from the scene, engaged in conversation with each other.  They had noticed Edgerton about twenty minutes before he was killed, seated on the outside seat of the station.  There was a double track here, on the west side of which was the small station building with a platform around it varying from five to fifteen feet in width, of which the edge came within two feet and two inches of the west rail

of the western track.   On the east side of the tracks was another platform, of smaller dimensions, being only about about four feet wide, and connecting the two platforms was a board walk, about five feet wide and level with the rails, and located about the middle of the station.   When trains stopped at University Station they blocked this crossing; and people coming from the west side, who desired to enter the train, were compelled either to enter from the west, or to go a long way around the train to get to the eastern platform, or to pass over to that platform before the train came into the station.

The two witnesses referred to stated that they saw Edgerton get up from his seat, and advance to the edge of the western platform, where he stood three or four minutes; that while he stood there, they saw a local or accommodation train from Washington coming into the station on the east track; that this train was just about to stop, but had not yet stopped; and that just then an express train coming from the north on the west track at the rate of 50 or 60 miles an hour, struck Edgerton and killed him.   Edgerton was standing still on the edge of the platform at the time, just opposite the crossing between the two platforms, looking apparently in the direction of Washington or of the approaching accommodation train, and with his back therefore somewhat towards the express train.   He was struck by the side of the engine, then sucked in by it, as it were, and thrown back upon the platform.   A great hole was made in his skull; and he seems to have died almost instantly.

There was testimony tending to show that the engine of the express train had blown no signal whistle at the usual whistling post about 1500 or 1600 feet north of University Station; and that no whistle was blown at all until the danger signal was sounded when the engine of the express train was only about 15 or 20 feet away from Edgerton. But it also appeared in evidence that the track here to the north was straight for a mile or two, or as far as the eye

could reach, and that there was no obstruction to prevent any one from seeing the approaching express train for that distance. There was likewise some testimony to show that sometimes passengers when late would often get on the train from the west side, although the eastern platform was the platform regularly used for the admission and egress of passengers on the trains on the eastern track.

A rule of the railroad company was also given in evidence, which provided that whenever any passenger train was standing at a station receiving or discharging passengers on double track, no other train, whether passenger or freight, should attempt to run past, until signalled so to do by the standing train, or until that train has commenced to move on. But it did not definitely appear that this rule was in force at the time of the accident, and there was no testimony whatever to show that it was known to the deceased or relied on by him, if it was in operation.

This was the substance of the testimony bearing upon the accident, although there were some minor details not deemed necessary to be related here; and it was all adduced on behalf of the plaintiff. The defendant offered no testimony. But upon the conclusion of the plaintiff's case, its counsel requested an instruction to the jury, which was given, to return a verdict for the defendant. To this ruling exception was duly taken on behalf of the plaintiff; and the case is now here before us on that exception, judgment having been rendered for the defendant.

*Messrs. A. A. & T. W. Birney* and *Mr. Arthur Peter* for he appellant:

1. Edgerton, in the eye of the law, was a passenger. Neither entry into the cars nor payment of fare is essential to create the relation of carrier and passenger. Being in the waiting-room waiting to take the cars is as effectual as if he had been in the body of one of them. *Gordon* v. *Railroad,* 40 Barb. 550. Or he may stand or walk on the

platform. *Railroad* v. *Riley,* 39 Ind. 568; *McDonald* v. *Railroad,* 26 Iowa, 124; Shearman & Redfield on Neg., pp. 304–307.

2. The railroad company was guilty of direct and inexcusable negligence. To permit a train to pass on a track between a platform and another track on which a passenger train was standing, just as passengers were passing from the depot to take the train, and upon the track which they had to cross, was negligence. *Klein* v. *Jewett,* 26 N. J. Eq. 474; *Archer* v. *Railroad,* 106 N. Y. 597. The rule of defendant company prohibiting one train from passing a station where another train is standing to receive or discharge passengers is of great weight, as an admission of the defendant showing its own standard of negligence. *Hauer* v. *Railroad,* 60 Md. 461; *Railroad* v. *Anderson,* 72 Md. 519; *Railroad* v. *Ward,* 35 Ill. App. 429; *Wood* v. *Railroad,* 70 N. Y. 200.

3. Edgerton was not guilty of contributory negligence. He had a right to think himself safe, and to be protected. The law will never hold it imprudent in any one to act upon the presumption that another in his conduct will act in accordance with the rights and duties of both. Shearman & Redfield on Neg., p. 37; *Newson* v. *Railroad,* 29 N. Y. 39. Deceased had a right to presume that defendant would perform its duty. Shearman & Redfield on Neg., sec. 31; *Vennall* v. *Garner,* 1 Cromp. and Meeson, 20. While it is ordinarily the duty of a person about to cross a track to watch for approaching trains, a person about to take a train standing at a station waiting to receive passengers has a right to presume that trains will be so run, and the road so operated, that a track between the station and that upon which said train is standing, can be safely passed. *Pennsylvania Co.* v. *Keane,* 41 Ill. App. 317; Thompson on Carriers of Pass. 269; Beach on Contrib. Neg. (2 ed.) 210; *Railroad* v. *Ward,* 35 Ill. App. 429. A passenger crossing a track at a station may relax ordinary vigilance, and is not bound to look for an approaching train, because he is warranted in believing that no train will, at that time,

pass over the track he has to cross.  *Jewett* v. *Klein*, 27 N. J. Eq. 551 ; *Sonier* v. *Railroad*, 1 New Eng. Rep. 493. In a similar case, the question of negligence was held to be one for the jury.  *Langan* v. *Railroad Co.*, 3 R. R. Cases, 358.

The Massachusetts cases cited by counsel for defendant do not apply here, because in that State a statute requires a complainant to show himself free from negligence.   The rule in the District of Columbia is otherwise.   And even the Massachusetts courts are modifying their first decisions on this question.   *Wheelock* v. *Railroad Co.*, 105 Mass. 203; *Sonier* v. *Railroad Co.*, 1 New Eng. Rep. 493.

It is not negligence in a person to board or leave a train on the side by which it is not usually boarded or left, if the officers of the company tacitly permit people to so enter and leave it.   And this was so in the present case.  *Railroad Co.* v. *Lowell*, 151 U. S. 209.   Even if the plaintiff did not use ordinary care, if the accident could have been averted by reasonable diligence of the defendant, it is liable.  *Trainor* v. *B. & O. Railroad Co.*, 33 Md. 542-548.

4. The court erred in directing a verdict, unless the evidence showed beyond all question that Edgerton was guilty of negligence contributing directly to his death.   A case should never be withdrawn from the jury unless the testimony be of such conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict rendered in opposition to it.  *Ins. Co.* v. *Doster*, 106 U. S. 30 ; *R. & D. Railroad Co.* v. *Powers*, 149 U. S. 43 ; *Railroad Co.* v. *Anderson*, 72 Md. 519; *Railroad Co.* v. *Van Steinberg*, 17 Mich. 122 ; *Jones* v. *Railroad Co.*, 21 D. C. 347.

*Mr. Geo. E. Hamilton* and *Mr. M. J. Colbert* for the appellee :

1. The mere presence of a person on the premises of a railroad company, in its depot or upon its platform, is not

sufficient to create the relation of carrier and passenger. Hutchinson on Carriers, par. 562. And in paragraph 517 the same author says that a carrier is obliged to furnish safe and suitable stational facilities for passengers ; but where the carrier has furnished a safe and suitable platform, it is not liable though a passenger is accidentally injured upon it.

Not only must there be a *bona fide* intention of becoming a passenger, but also a purpose to comply with the rules of the company as to the payment of fare or otherwise consummating the contract which entitles him to carriage. Wood on Railways, vol. 2, sec. 298 ; Gordon v. *Railroad Co.*, 40 Barb. 546. In the present case it is contended that Edgerton had a ticket in his possession, because he had at some period previous to the time of the accident purchased such a ticket, although he had no such ticket in his possession when killed ; and the further inference is drawn that because he had such a ticket in his possession and was present on the platform he intended to take passage on the local train. This is an inference from an inference, and is not sufficient proof of the fact. *Weaver* v. *Railroad Co.*, 3 App. D. C. 436 ; *Manning* v. *Ins. Co.*, 100 U. S. 693 ; *United States* v. *Ross*, 92 U. S. 281.

2. The decedent was himself guilty of such contributory negligence as prevents a recovery. For a discussion of the law upon this subject we refer to the following authorities : *Railroad Co.* v. *Houston*, 95 U. S. 697 ; *Schofield* v. *Railroad Co.*, 114 U. S. 615 ; 4 Am. and Eng. Enc. of Law, p. 70 ; *Railroad Co.* v. *State*, 60 Md. 468 ; *Railroad Co.* v. *Anderson*, 72 Md. 530 ; *Tuttle* v. *Ins. Co.*, 134 Mass. 175 ; *Wheelwright* v. *Railroad Co.*, 135 Mass. 225 ; *Railroad Co.* v. *Powers*, 149 U. S. 43.

Mr. Justice MORRIS delivered the opinion of the Court :

We think the court below was right in granting the instruction that was requested by the defendant. The plaintiff had entirely failed to make out a case for the consideration of the jury. There is no evidence whatever in the

record to show that the deceased was entitled to the protection due to a passenger in the act of entering upon or departing from a train.    There is nothing to show that, at the time of his death, he was entitled to enter upon any train of the railroad company.    But even if he were so entitled, and if he was at the time of the accident engaged in the attempt to enter a train, it does not follow that a person between whom and the railroad company the relation of passenger and common carrier exists, may close his eyes and shut his ears, and trust implicitly to the company to insure his safety against all hazards.    It is elementary law that a common carrier is not an insurer of persons ; and it is equally elementary law, that, while the common carrier is justly held to a rigid accountability for the performance of the contract for safe transportation entered into by it, the passenger himself must, at every stage of that transportation, use all the reasonable care and caution of which the circumstances are capable.    He may not place himself in a position of obvious danger, and thereafter hold the common carrier liable for the result of his own carelessness.

It is difficult to account for the action of the deceased in the present case.    It would seem as if there were some sudden mental paralysis that caused him for the moment to lose the control of his faculties.    But this would relegate the occurrence to the category of providential dispensations for which the railroad company should not be held responsible.    The only other rational theory that we can entertain is that he was so grossly negligent or so remarkably reckless that he must be regarded as himself the author of his own misfortune.    In contemplation of law, it was undoubtedly negligence on his part to place himself in the position of danger in which he did place himself, when there was, so far as the record discloses, no inducement whatever to him from the company so to expose himself.

It is of no consequence, perhaps, in this connection that the rule of the company prohibiting the passage of other

trains while any train was engaged at a station in receiving or discharging passengers, should not be invoked in favor of a person who is not shown to have been aware of its existence or to have acted in reliance upon its enforcement. Nor is it, perhaps, of much consequence that the rule in the present instance did not seem to be applicable at all, inasmuch as the accommodation train had not yet stopped and was not engaged in receiving or discharging passengers at the time when the express train passed. The duty of a railroad company to the public does not depend upon the rules and regulations which it may have formulated for the direction of its own employees. The care and caution required wherever passengers are being discharged or received are the dictate of public policy and of a due regard for the public safety, and should be enforced independently of all regulations of the company. But it does not appear in the present case that the conditions existed at University Station at the time of this accident which demanded the exercise of such care and caution as is claimed here on behalf of the appellant.

But whatever may have been the negligence of the railroad company in this instance, it is entirely clear to us, upon the plaintiff's own showing, that the disaster which befell the deceased was the immediate result of his own want of ordinary care and prudence. The track, on which the express train was coming, was straight for upwards of a mile. The train could have been seen by the deceased when it was upwards of a mile away, if he had chosen to use his eyes. There was nothing to prevent him from hearing it in due time. There was no confusion, din or bustle, such as often exists at crowded stations, and for which even stalwart men may sometimes be excused for losing their presence of mind. Apparently, the deceased was entirely alone, with nothing to distract his attention, and with every opportunity to observe the approach of both trains and every facility to guard against danger. With such opportunity and such facility, if he, without just

cause or reason, placed himself in a position of obvious danger, as he undoubtedly did, the unfortunate consequences must be charged to himself as the result of his own negligence.    It is no more than conjecture that he intended to enter the accommodation train.    Even if he did, that train had not stopped and was not ready to receive him ; and the railroad company had assumed no duty with reference to his entry thereon.

We fail to find in the record any testimony whatever to justify the submission of this case to a jury.    There was no issue of fact made by that testimony ; and there was no possible inference to be drawn from the facts as shown by the plaintiff other than that the accident was the direct result and proximate consequence of the absence of due care and caution on the part of the deceased.

We are of opinion, therefore, that the court below was right in granting the peremptory instruction to the jury to return a verdict for the defendant ; and consequently *the judgment of that court must be affirmed, with costs.    And it is so ordered.*